E-FILED
Wednesday, 30 March, 2016  04:29:06 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ILLINOIS EXTENSION PIPELINE COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 15-3052 |
| FREDERICK J. THOMAS, JR., as Co-Executor of the Estates of Frederick J. Thomas, Sr., Deceased, and Helen R. Thomas, Deceased, and CLARENCE D. THOMAS, as Co-Executor of the Estates of Frederick J. Thomas, Sr., Deceased, and Helen R. Thomas, Deceased. | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Plaintiff Illinois Extension Pipeline Company, LLC, has filed a Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201. The Plaintiff seeks a declaration that an easement is valid and enforceable according to its terms, thereby giving the Plaintiff all the rights set forth therein. The Defendants have filed Counterclaims. Pending before the

Court are several motions.

The Complaint alleges that because the Parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, the Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is situated in the Central District of Illinois.

Defendants Frederick J. Thomas, Jr., as Co-Executor of the Estates of Frederick J. Thomas, Sr., Deceased, and Helen R. Thomas, Deceased; and Clarence D. Thomas, as Co-Executor of the Estates of Frederick J. Thomas, Sr., Deceased, and Helen R. Thomas, Deceased, filed their Answer, Affirmative Defense and Counterclaims.  Subsequently, the Defendants filed an Amended Counterclaim for Declaratory Judgment.

## I. BACKGROUND

### (A)

In Count I of the Complaint, the Plaintiff alleges it is the owner of a pipeline right-of-way that crosses certain real property located in DeWitt

2

County, which it has denominated as Tract 08-004. Attached to the Complaint is a certified copy of the 1939 right-of-way grant for the tract. The Plaintiff alleges it is the current successor to the grantee.

The Plaintiff further asserts that the pipeline right-of-way that crosses Tract 08-004 is part of a longer right-of-way that was created in 1939 for the installation of a pipeline between the towns of Hayworth and Patoka, Illinois. That right-of-way is now commonly referred to as the "Luxor Line." The Plaintiff is constructing a new underground pipeline within the Luxor Line right-of-way for the transportation of crude oil in interstate commerce. In order to build the new pipeline the Plaintiff intends, in part, to utilize its Luxor Line easement rights, as provided on the face of the 1939 grant applicable to Tract 08-004.

The Defendants allege the new easement would have expanded the Plaintiff's rights beyond what was provided for in the easement at issue. This is because the new easement creates a safety risk not contemplated by that easement. Moreover, the Plaintiff cannot expand its rights under the easement at issue by this action. The Defendants claim the Plaintiff is

constrained by its Certificate In Good Standing issued by the Illinois Commerce Commission ("ICC") for its proposed new pipeline and does not have the right to avoid the restrictions contained therein by this action.

The Plaintiff's Complaint states that in recent years, there has been a significant amount of litigation in this Court and the Southern District of Illinois concerning the continuing validity of the Plaintiff's Luxor Line easement rights. The Plaintiff alleges those rights have been upheld in each case by three different United States District Judges.

As of February 8, 2014, Tract 08-004 was owned by Frederick J. Thomas and his wife, Helen R. Thomas. Frederick J. Thomas and Helen R. Thomas have since died testate. The Estates of Frederick J. Thomas, Sr., Deceased and Helen R. Thomas, Deceased, remain open and currently hold title to Tract 08-004. The Co-Executors of both estates are the same: Frederick J. Thomas, Jr., and Clarence D. Thomas. They are now the successors to the grantors under the 1939 easement grant applicable to Tract 08-004.

The Plaintiff asserts that in the first quarter of 2014, it opted to

4

utilize its existing Luxor Line rights to build the new pipeline across Tract 08-004.  In May of 2014, Helen R. Thomas refused to acknowledge the validity of the Luxor Line easement and returned the check to the Plaintiff.

The Plaintiff further contends that on February 5, 2015, a lawyer purporting to act on behalf of Helen R. Thomas (who had died several months earlier) sent an email to the Plaintiff's counsel stating that his client would not concede the "enforceability of the existing easement," would not admit "that the existing Luxor easement is enforceable according to its terms," and further stating that "[s]hould there be new litigation, my client is reserving the right to assert that the existing easement is potentially unenforceable."

The Plaintiff filed this action seeking a declaration of its rights under the Luxor Line easement across Tract 08-004.  The Defendant asserts the Plaintiff waived the right to obtain eminent domain authority for the land which is the subject matter of this case, claiming at the ICC that it was fully prepared to rely exclusively on the terms of the easement at issue.

(B)

In Counterclaim I, the Defendants-Counterclaimants seek a declaratory order as to whether the rights created under the original easement allows the Plaintiff to create a safety risk under the terms of the easement.   In Counterclaim II, the Defendants-Counterclaimants seek contract damages based on damages that may result from the construction, operation or maintenance of such pipelines.

As for the Amended Counterclaims, in Counterclaim I, the Defendants allege that Plaintiff's conditional right to construct a second pipeline on the property is exhausted.  In Counterclaim II, the Defendants assert that Plaintiff's pipeline project exceeds its rights under the 1939 right-of-way grant.  Accordingly, the Defendants-Counterclaimants seek a declaration that the right-of-way grant at issue does not convey to the Plaintiff rights sufficient to construct, operate and maintain the Southern Access Extension (SAX) Pipeline project and that construction, operation and maintenance of the SAX on the property of the Defendants would require a new right-of-way with expanded rights.

6

## II. DEFENDANTS' MOTION FOR ADDITIONAL DISCOVERY

### (A)

The Defendants-Counterclaimants seek a declaration that the 1939 easement cannot be used to construct the SAX because (1) the second pipeline right under the 1939 easement was already exercised in 1945 and (2) the SAX project does not conform to the 1939 easement.  The Plaintiff has moved for Summary Judgment on the Amended Counterclaim, contending (1) that the pipeline right installed in 1945 was not installed pursuant to the 1939 easement; and (2) under Knight v. Enbridge Pipelines (FSP) L.L.C., 759 F.3d 675 (7th Cir. 2014), Amended Counterclaim II should be dismissed because the claims are speculative.

In their Motion pursuant to Rule 56(d) for additional discovery necessary to oppose the Plaintiff's Motion for Summary Judgment on the Defendants' Amended Counterclaim, the Defendants allege that the Plaintiffs' sought declaration will not resolve the issues between the Plaintiff and Defendant regarding the construction of the SAX.  It will only determine whether or not the 1939 easement is valid and enforceable

according to its terms.

Rule 56(d) provides as follows:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer consideration of the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "The Rule places the burden on the non-movant that believes additional discovery is required to state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery."  Sterk v. Automated Retail, LLC, 770 F.3d 618, 628 (7th Cir. 2014) (internal quotation marks and citation omitted).  It "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious."  Davis v. G.N. Mortg. Corp., 396 F.3d 869, 885 (7th Cir. 2005).

The Defendants have attached a declaration seeking additional discovery.  The declaration is signed by Defendants Clarence D. Thomas

and counsel and identifies what the Defendants believe is discovery necessary to oppose the motion for summary judgment.

The Defendants assert the discovery will allow them to demonstrate that the second line right under the 1939 easement has already been exercised to construct the 1945 pipeline and, therefore, is not available for construction of the SAX pipeline.   Moreover, and separately, the Defendants claim discovery will allow them to demonstrate that the SAX project is not compatible with the 1939 easement and that its construction, operation and maintenance will require the parties to negotiate a new modern easement of the type utilized for the SAX in "greenfield" properties.

(B)

The Plaintiff contends that Defendants lack personal knowledge of the matters asserted in the declaration.  It further alleges that Defendants' request is essentially a delay tactic.  The Plaintiff asserts there simply is no evidence (1) that the pipeline constructed in 1945 was not constructed pursuant to the easement executed in 1945, but instead was constructed pursuant to a preexisting right to build a second pipeline that was granted

in the Luxor Line easement executed six years earlier; and (2) that Plaintiff's new pipeline violates any unwritten safety requirements behind the words of the 1939 Luxor Line easement.

The Plaintiff further alleges that Defendants' counsel, Thomas J. Pliura, has been "deeply involved" in a number of proceedings concerning this pipeline since 2007–before the ICC, before multiple state and federal courts, and before the Seventh Circuit.   Although Defense counsel has extensive knowledge about the details of the project, he has not yet identified a scintilla of evidence creating a factual dispute which would preclude summary judgment on the counterclaims.

The Plaintiff alleges the Defendants already have the information they now claim is necessary to oppose the Plaintiff's motion for summary judgment on Count II.  Since 2007, Mr. Pliura has represented numerous landowners in attempting to prevent construction of the pipeline. Throughout these legal proceedings, Mr. Pliura has received thousands of pages of discovery relating to the project.  Mr. Pliura has represented landowners in Kelly v. Enbridge (U.S.), Inc., No. 07-3245, 2008 WL

2123755 (C.D. Ill. May 15, 2008) (Scott, J.); Enbridge Pipelines (Illinois) LLC v. Preiksaitis, Mo. 08-cv-2215 (C.D. Ill.) (Baker, J.); Enbridge Pipelines (Illinois) LLC v. Burris, No. 08-cv-0697-DRH, 2010 WL 1416019 (S.D. Ill. March 31, 2010) (Herndon, C.J.); Enbridge Pipelines (Illinois) LLC v. Hortenstine, No. 08-cv-842, 2010 WL 3038529 (S.D. Ill. Aug. 3, 2010); Enbridge Pipelines (Illinois) L.L.C. v. Moore, 633 F.3d 602 (7th Cir. 2011).

The Plaintiff further asserts that Mr. Pliura has played a key role in two lengthy ICC proceedings, 07-0446 and 13-0446, both of which delved deeply in to the details of the pipeline project.  See In re Illinois Extension Pipeline Co., L.L.C., No. 07-0446; In re Enbridge Pipelines (Illinois) L.L.C., No. 13-0446 (Apr. 29, 2014).  The Plaintiff claims that, when his efforts to block the new pipeline at the ICC failed, Mr. Pliura pursued various appeals.  See Pliura Intervenors v. Illinois Commerce Comm'n, 2015 Ill. App (4th) No. 140592-U (2015); Pliura Intervenors v. Illinois Commerce Comm'n, Ill. App. Ct., No. 4-15-0084 (2015); Pliura Intervenors v. Illinois Commerce Comm'n, 405 Ill. App.3d 199 (2010).

11

Additionally, as for sections of the new pipeline that will be built on new easements acquired through eminent domain, Mr. Pliura has represented a number of landowners in condemnation cases in state courts in counties along the route, wherein directed verdicts have been entered against his clients in DeWitt and Livingston Counties.  See May 15, 2015 Final Judgment Order, Enbridge Energy, Limited P'ship v. First Midwest Land Trust No. 8626 (14 ED 10, et al., Livingston County); June 1, 2015 Final Judgment Order, Enbridge Pipelines (Illinois), L.L.C. v. Hoke (14 ED 3, et al., DeWitt County).

The Plaintiff asserts that, in connection with those proceedings, Mr. Pliura has deposed or cross-examined John McKay, the Plaintiff's manager of land services for the United States, about the details of the project.  Mr. McKay has testified at length about the specific procedures that Plaintiff will follow during construction of the pipeline, and the pipeline's potential effect on the land, including measures taken to ensure that the pipeline will not interfere with the cultivation of the land.

In the two ICC proceedings, Mr. Pliura represented numerous

12

landowners Intervenors.  One proceeding included extensive testimony of

Enbridge and ICC Staff witnesses, at which the Intervenors had an

opportunity to cross-examine the witnesses.  In the other proceeding, Mr.

Pliura was served with Enbridge's answers to 78 data requests from ICC

staff and Intervenors, which included information about the safety of the

pipeline and its potential effect on the land, as follows:

- [A]ll international, federal, state and local permits, licenses, and other similar types of documents which Enbridge will be required to obtain in order to construct its proposed pipeline.  (07-0446 Data Request No. 1.6)

- Information regarding "the type of equipment (safety equipment, pigs, etc.) that will be needed in conjunction with the proposed pipeline that will allow the Company to meet the long term needs of its customers, while also maintaining compliance with applicable statutes and regulations." (07–0446 Data Request No. 1.17.)

- An explanation of "how the Company plans on fulfilling the requirements of Section 15-601 of the Public Utilities Act during the construction and operation of the proposed pipeline."  (07-0446 Data Request No. 1.25.)

The Plaintiff further notes that both ICC proceedings relied heavily

on the Agricultural Impact Mitigation Agreement ("AIMA"), an agreement

between Enbridge (the Plaintiff's predecessor) and the Illinois Department

13

of Agriculture containing an in-depth discussion of the extensive "measures which the Company will implement as it constructs the pipeline across agricultural land." The AIMA is part of the record from the ICC's decision. Under the AIMA, the Plaintiff must adhere to a number of standards. The Plaintiff has certain obligations in the event of damage that occurs during the pipeline's construction. These include repair and/or reasonable compensation.

Upon reviewing the record, the ICC found that Plaintiff's proposed route "is reasonable and it is hereby approved" and that "due consideration in the route selection process was given to minimizing impacts on wetlands and other environmentally sensitive locations, cultural areas, the number of properties and landowners affected, major roadways and high density populations areas."

To the extent that Mr. Pliura claims he does not know where the pipeline will be located, the Plaintiff notes that the ICC proceedings verified the exact location of the pipeline. The 07-0446 order explains:

> As more specifically described in Exhibit A to the Application, the Extension Project's right-of-way will originate at Enbridge's

14

Flanagan terminal facility and run west-southwest parallel to the Spearhead Pipeline for approximately 14 miles. At that point, the route turns south to traverse some 30 miles of agricultural land east of the Bloomington-Normal municipal area. After that, the route turns southwest for approximately 10 miles to run parallel to an existing right-of-way west of the Village of Downs in McLean County to a junction point with the CIPC right-of-way west of Heyworth in McLean County. At that point, the Extension Project will parallel the CIPC right-of-way, except for the aforementioned necessary deviations, to run basically south through DeWitt County (west of Clinton) into Macon County running west of Decatur and continuing into Christian and Shelby Counties along the CIPC route passing to the east of Pana into Fayette County and continuing therein east of Vandalia to enter into Marion County and terminate at Enbridge's property north of Patoka, Illinois.

Doc. No. 21, Ex. B, Order, at 55. The Plaintiff further claims that it produced detailed information disclosing any deviations from the Luxor Route. In the 13-0446 proceeding, Enbridge Pipelines filed a petition for eminent domain authority. The ICC authorized Enbridge to seek easement rights in a manner consistent with the Eminent Domain Act with respect to those parcels.

Based on the foregoing, the Plaintiff contends Mr. Pliura has all of the relevant information concerning the details of the pipeline project. Because he has this massive volume of information, therefore, the Court should

reject his assertion that he does not have all of the relevant information and find that no more delay is necessary.

(C)

The Plaintiff further alleges the Defendants' assertion that discovery is needed in order to support their allegation that Plaintiff's right to construct a 1939 Luxor Line Easement has already been exercised is in bad faith.  Mr. Pliura raised the issue in an earlier case before Judge Baker, who found that 1939 easement granted the right to construct two pipelines and, further, that the tracts at issue were not subject to the 1929 easement or the 1945 easement.  Judge Baker observed that "Attorney Pliura is confused about, and failed to do a reasonable investigation of, the facts."  See Doc. No. 1, Ex. E., at 2.

The Court concludes that the discovery the Defendants seek is speculative and has no basis in the record.  Attached to the Defendants' motion is a document which is dated 1945 and states that the grantors "hereby grant and convey . . . a right of way and easement . . . giving to the said grantee the right to lay, operate and maintain one pipeline."  Although

the Defendants allege they anticipate discovering other documents which reflect an agreement between the pipeline company and former owners of the property, they offer nothing but speculation in claiming the information exists "[u]pon information and belief."  Courts need not authorize additional discovery based on nothing more than "mere speculation" that would "amount to a fishing expedition."  See Davis v. G.N. Mortgage Co., 396 F.3d 869, 885 (7th Cir. 2005).

The language of the document granting an easement in 1945 is clear. Accordingly, the Court will not authorize additional discovery based on nothing more than speculation.  The Defendants' Motion for additional discovery will be denied.

## (D)

The Plaintiff further claims that the additional evidence sought by the Defendants would not preclude summary judgment on either of the counterclaims.  Counterclaim I concerns the language of an agreement. Although the Defendants allege additional discovery is needed "to prove that the 1945 pipeline was installed pursuant to the 1939 easement's

17

second pipeline right and that the 1945 easement is a memorialization of that installation," the Defendants have not identified any ambiguous language. Absent ambiguity, a party may not rely upon extrinsic evidence as to the intent of an agreement. See Barnett v. Ameren Corp., 436 F.3d 830, 833 (7th Cir. 2006). Accordingly, even if the request was not denied because of its speculative nature, the Defendants still would not be entitled to the relief they seek on Counterclaim 1.

The same is true regarding Counterclaim II. It is a claim that the Plaintiff's pipeline project exceeds the rights granted under the right-of-way grant. This claim relates to safety and farmability issues, which are entirely speculative at this point. See Knight v. Enbridge Pipelines (FSP) L.L.C., 759 F.3d 675, 677 (7th Cir. 2014) ("The Operator promised to leave the surface farmable. Failure to keep that promise could be addressed under the law of contract."). Accordingly, the Court concludes that the proposed discovery regarding Count II is not relevant to determining whether there is a genuine issue of material fact as to the summary judgment motion.

For multiple reasons, the Court concludes that summary judgment is

18

warranted on the Defendants' Amended Counterclaims.  In relying on speculation, the Defendants have not met their burden of showing why additional discovery is necessary in order to respond to the Plaintiff's motion.  Additionally, for the reasons stated above, the discovery sought would not defeat the Plaintiff's motion for summary judgment.

Accordingly, the Defendants' motion for additional discovery pursuant to Rule 56(d) will be Denied.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### (A)

Plaintiff Illinois Extension Pipeline Company, LLC seeks summary judgment on the Defendants' Amended Counterclaims.  In support of the motion, the Plaintiff notes that Defendants have admitted all of the allegations of the Plaintiff's Complaint, including that Plaintiff is the owner of an existing pipeline right-of-way (the "1939 Luxor Line Easement") that crosses Defendants' land and that the 1939 Luxor Line Easement is valid and enforceable, as every court that has considered the issue has determined, including this Court and the Seventh Circuit.

On July 8, 2009, the ICC issued an order stating that the proposed SAX Pipeline "is necessary and should be constructed, to promote the security or convenience of the public." The ICC authorized the Plaintiff to construct, operate and maintain the SAX Pipeline. In the order, the ICC specifically noted that Plaintiff would be utilizing the existing Luxor Line right-of-way acquired when the Plaintiff's predecessor merged with Central Illinois Pipeline Company LLC ("CIPC"). The ICC determined that Plaintiff's proposed route "is reasonable and it is hereby approved" and that "due consideration in the route selection process was given to minimizing impacts on wetlands and other environmentally sensitive locations, cultural areas, the number of properties and landowners affected, major roadways and high density population areas." See Doc. No. 18, Ex. 3, Order at 57. There are three separate pipelines that run across Tract 08-004.

In 1929, an easement ("1929 Easement") was granted to The Texas-Empire Pipe Line Company giving the right to "lay, operate and maintain one pipe line for the transportation of gas and oil" across Tract 08-004. The pipeline constructed under that easement was a 12" diameter pipeline.

The 12" pipeline and the 1929 Easement are currently owned by the Magellan Pipeline Company, LLC ("Magellan").

In 1939, the Luxor Line Easement was granted to the Texas-Empire Pipe Line Company giving the right to "lay, operate and maintain" a pipeline. The pipeline constructed under the 1939 Luxor Line Easement was a 10" diameter pipeline (the "Luxor Line"). The Luxor Line was built in 1939, and has been there ever since. The 1939 Luxor Line Easement grants the right to "lay, operate and maintain, adjacent to and parallel with the first, a second pipe line."

In 1945, a third easement was granted to The Texas-Empire Pipe Line Company ("1945 Easement"), giving the right to construct and build a pipeline adjacent to and parallel with the 12" diameter pipeline (not the 10" diameter Luxor Line) that was already constructed on the property under the 1929 Easement. Relying on the Affidavit of Barry A. Kendall, a Senior Right-of-Way Title Agent working on behalf of the Plaintiff, the Plaintiff alleges the pipeline constructed under the 1945 Easement was a 12" diameter pipeline adjacent to and parallel with the first 12" pipeline that

had been installed pursuant to the 1929 Easement.  The 12" diameter
pipeline was not constructed pursuant to the grantee's right to build a
second pipeline under the 1939 Luxor Line Easement.  Mr. Kendall reached
this conclusion upon examining the documents that are part of the chain
of title for Tract 08-004.

The Defendants dispute the Plaintiff's allegation that the 12"
diameter pipeline was not constructed pursuant to the grantee's right to
build a second pipeline under the 1939 Luxor Line Easement.  Moreover,
the Defendants claim they need additional discovery to properly dispute the
allegation.  As stated earlier, however, that motion will be denied.

The 1945 Easement makes no mention of the 1939 Luxor Line
Easement.   Like the original 12" pipeline installed in 1929 and the
associated 1929 Easement, the additional 12" pipeline installed in 1945,
together with the associated 1945 Easement, are today owned by Magellan.

On June 23, 2004 Magellan, which was at that time the successor to
the grantee under all three easements, assigned only the 1939 Luxor Line
Easement to CIPC, a predecessor to the Plaintiff.   Neither the 1929

Easement nor the 1945 Easement were assigned to CIPC.  Instead, those

two easements and their respective 12" pipelines were retained by Magellan,

which continues to own them today.

The right set forth in the 1939 Luxor Line Easement to construct a

second pipeline has not previously been exercised.  The Defendants dispute

the assertion but offer no evidence to contest Mr. Kendall's Affidavit.

(B)

A. Legal standard

Summary judgment is appropriate if the motion is properly supported

and "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The

Court construes all inferences in favor of the non-movant.  See Siliven v.

Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).  To

create a genuine factual dispute, however, any such inference must be based

on something more than "speculation or conjecture."  See Harper v. C.R.

England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

Summary judgment "is the put up or shut up moment in a lawsuit."  See

Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).  Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor.  See id.

The Plaintiff asserts it is entitled to summary judgment on both of the Defendants' Counterclaims.

(1)

The Defendants contend summary judgment as to Counterclaim I is not warranted because Mr. Kendall is not qualified to provide an opinion as to whether the 1945 pipeline was installed pursuant to the second line right under the 1939 easement.  They contend the Affidavit is not based on personal knowledge in violation of Rule 56 because Mr. Kendall was not present when the 1945 pipeline was built.

The Defendants' argument is without merit.  They offer no evidence that only someone who was present more than 70 years can offer an opinion as to what occurred.  The Court concludes that, as the Plaintiff's Senior Right-of-Way Title Agent, Mr. Kendall has the requisite qualifications and experience to examine easement documents that are part

of the public record.  Mr. Kendall's Affidavit is consistent with the public records and is uncontested.

The Plaintiff is entitled to summary judgment on the Defendants' Counterclaim that Plaintiff's right to construct a second pipeline under the 1939 Luxor Line Easement has already been exercised to construct a 12" pipeline, which exists on the Defendants' property.  Accordingly, summary judgment will be allowed as to Counterclaim I.

(2)

The Defendants also seek summary judgment on Counterclaim II because the project is too "unsafe" to ever be constructed under the language of the 1939 Luxor Line Easement.  The Defendants allege the SAX Pipeline project "creates a safety risk exceeding any reasonably contemplated safety risk at the time the easement was made" and that such "safety risk" is "incompatible with farming and activities normally associated with farming of the land and imposes burdens upon the land and the landowner not present nor anticipated in 1939 when the right-of-way grant was executed."

The Court does not have the authority to alter the Parties' agreement and insert a provision regarding safety.  The Court presumes that the project will comply with any all federal pipeline safety regulations  and any state law regulations, if applicable.  To the extent that Defendants are asserting another "farmland safety" claim, such a claim is not justiciable for the reasons articulated by the Seventh Circuit.  See Knight, 759 F.3d at 677.  If the land is no longer "farmable" due to the construction of the pipeline, the Defendants will have a contract remedy.  That is an issue for another day.

As the Plaintiff alleges, however, the Court has no legal or factual basis to enter a declaratory judgment barring the construction of the SAX Pipeline project because it may violate an unwritten pipeline safety standard that is "implicit" in the 1939 Luxor Line Easement.

The Plaintiff's Motion for Summary Judgment as to the Defendants' Amended Counterclaims will be Allowed.  Judgment will be entered in favor of Plaintiff Illinois Extension Pipeline Company, LLC, on both of the

Defendants' Amended Counterclaims.[1]

## IV. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

### (A)

The Plaintiff has moved under Rule 12(c) for judgment on the pleadings. Based on the allegations in the Complaint and the Defendants' admissions, the Plaintiff alleges it is entitled to judgment on the pleadings. Accordingly, the Plaintiff asks the Court to enter judgment declaring that the easement attached to the Complaint as Exhibit A is valid and enforceable according to its terms and gives Plaintiff Illinois Extension Pipeline Company, LLC, all rights set forth therein.

The Defendants question whether a motion under Rule 12© is appropriate or whether a motion for summary judgment is a more appropriate vehicle. In most cases, it is a defendant that seeks judgment on the pleadings under Rule 12(c).

The Seventh Circuit has stated, "If the facts are uncontested (or the

---

[1]Because the Amended Counterclaims were the operative Counterclaims before the Court, the Plaintiff's Motion to Dismiss the Defendants' initial Counterclaims will be Denied as moot.

27

defendants accept plaintiffs' allegations for the sake of argument), it may be possible to decide under Rule 12(c); if the parties do not agree, but one side cannot substantiate its position with admissible evidence, the court may grant summary judgment under Rule 56." Richards v. Mitcheff, 696 F.3d 635, 638 (7th Cir. 2012).

(B)

Here, the facts are undisputed, though the Defendants have listed five "clarifications" in their Answer. As the Plaintiff alleges, however, Federal Rule of Civil Procedure 8(b) does not provide for a party to answer by clarification. A party must admit or deny the allegations or state that it lacks sufficient information to answer the assertion. See Fed. R. Civ. P. 8(b)(1), (5). Rule 8(b)(6) provides that allegations that are not denied are admitted. Each of the Plaintiff's allegations has been admitted by the Defendants either expressly or by the failure to deny.

In Clarification A the Defendants allege, "The new easement sought by IEPC would have expanded the rights of IEPC beyond what was provided for in the easement at issue." Because a new easement is not at

issue in this case, the clarification does not affect the Defendants' admissions of the allegations in the Complaint.

In Clarification B the Defendants allege, "The Proposed operation of the new pipeline exceeds the scope of the easement at issue because it creates a safety risk not contemplated by said easement." As the Plaintiff contends, this assertion is not responsive to any allegation in the Complaint. Additionally, the Court addressed this issue in connection with Count I of the Defendants' counterclaims. This clarification does not affect the Defendants' admissions of the allegations in the Plaintiff's Complaint.

In Clarification C the Defendants claim, "IEPC cannot expand its rights under the easement at issue by this action." The Plaintiff is simply seeking a ruling that the 1939 easement is "valid and enforceable according to its terms," and is not seeking to expand its rights. Accordingly, the clarification is not responsive to any allegation in the Complaint.

In Clarification D the Defendants allege, "IEPC is constrained by its Certificate In Good Standing issued by the Illinois Commerce Commission for its proposed new pipeline and does not have the right to avoid the

restrictions contained therein by this action." As the Plaintiff notes, there is no issue in this case concerning the ICC's orders. The Plaintiff would not be precluded from enforcing its easement on the Defendants' land even if there was no ICC order concerning the new pipeline. If the Defendants believe the Plaintiff has violated the ICC's order, they can raise the issue before the ICC. The clarification does not respond to any allegation in the Complaint. In Clarification E the Defendants claim, "IEPC waived the right to obtain eminent domain authority for the land which is the subject matter of this case, claiming at the ICC that it was fully prepared to rely exclusively on the terms of the easement at issue." As the Plaintiff alleges, this case does not concern eminent domain authority. Therefore, the clarification is not responsive to any allegation in the Complaint.

Additionally, the Defendants have pled an "affirmative defense" asserting that the 1939 easement "has become now a narrow easement established by use prior to ownership by [IEPC], which is something less than 20' in width." The Defendants requested "that any declaration by the Court define the width of the easement and furthermore, require IEPC to

30

confine its construction inside said width." As the Plaintiff contends, this is not a defense to any claim in its Complaint, which seeks a declaration that the 1939 easement attached thereto "is valid and enforceable according to its terms and gives Illinois Extension Pipeline Company, LLC, all the rights set forth therein." To the extent that Defendants are asking the Court to alter the width of the easement in a manner inconsistent with its terms, the Court lacks the authority to grant such relief.

The Plaintiff claims it is not seeking the right to do anything not allowed by the easement. Even if the width of the easement had been decreased, that would not affect the validity of the easement and the Plaintiff would still be seeking the same relief.

Accordingly, the affirmative defense does not preclude the Court from entering judgment on the pleadings in favor of the Plaintiff on the ground that Defendants have admitted every allegation in the Complaint.

Because the Defendants have admitted every allegation in the Plaintiff's Complaint, the Plaintiff is entitled to judgment on the pleadings. Accordingly, the Plaintiff's Motion pursuant to Rule 12(c) will be allowed.

31

Judgment will be entered in the Plaintiff's favor and against the Defendants, declaring that the Luxor Line right-of-way grant is valid and enforceable according to its terms, as stated in Exhibit A to the Plaintiff's Complaint. Plaintiff Illinois Extension Pipeline Company, LLC, is entitled to all rights as provided in the easement.

Ergo, the Motion of Plaintiff Illinois Extension Pipeline Company, LLC, to Dismiss the Defendants' Counterclaims [d/e 11] is DENIED AS MOOT.

The Motion of the Defendants under Rule 56(d) for additional discovery [d/e 20] is DENIED.

The Motion of the Plaintiff for Summary Judgment on the Defendants' Amended Counterclaims [d/e 18] is ALLOWED. Judgment will be entered in favor of the Plaintiff and against the Defendants on the Amended Counterclaims.

The Plaintiff's Motion for Judgment on the Pleadings [d/e 12] is ALLOWED.

The Clerk will enter a Judgment declaring that the easement attached

to the Plaintiff's Complaint is valid and enforceable according to its terms.

Plaintiff Illinois Extension Pipeline Company, LLC, is entitled to all rights

set forth therein.

Upon entry of Judgment, the Clerk shall terminate the case.

ENTER: March 30, 2016

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge

33